ROBINSON, J., dissenting.
¶ 34. I, too, dissent. I write separately because I dissent on slightly different grounds: I believe the trial court's failure to consider all available information concerning defendant's ability to post bail was not harmless. I would remand rather than rule as a matter of law that defendant in this case cannot be required to post cash bail.
¶ 35. To further explain my position-both my dissent from the majority as well as my departure from Justice Skoglund's dissent-I consider the impact on our law of the two 2018 amendments to Vermont's bail statute that are most relevant here: the shift in focus from ensuring a defendant's appearance in court to mitigating the risk of flight, and additional language requiring consideration of a defendant's financial ability to post bail. 2017, No. 164 (Adj. Sess.), § 3.[11] Considering these changes as applied to this record, I conclude that a trial court could find a risk of flight, but the court here failed to give due consideration to defendant's finances.
I. Risk of Flight
¶ 36. In 2018, the Legislature amended 13 V.S.A. § 7554(a)(1), dealing with the release of any person charged with an offense other than those held without bail pursuant to § 7553 or § 7553a, as follows:
(1) The defendant shall be ordered released on personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer unless the judicial officer determines that such a release will not reasonably ensure the appearance of the person mitigate the risk of flight from prosecution as required. In determining whether the defendant presents a risk of nonappearance flight from prosecution, the judicial officer shall consider, in addition to any other factors, the seriousness of the offense charged and the number of offenses with which the person is charged. If the officer determines that such a release will not reasonably ensure the appearance of the defendant as required the defendant presents a risk of flight from prosecution, the officer shall, either in lieu of or in addition to the methods of release in this section, impose the least restrictive of the following conditions or the least restrictive combination of the following conditions that will reasonably ensure the appearance mitigate the risk of flight of the defendant as required ....
*611 2017, No. 164 (Adj. Sess.), § 3. The Legislature defined "[f]light from prosecution" to mean "any action or behavior undertaken by a person charged with a criminal offense to avoid court proceedings." Id. § 5 (amending 13 V.S.A. § 7576 ). Throughout the balance of the statute, references to "ensuring the appearance" of the defendant have accordingly been changed to "mitigating the risk of flight" of the defendant as required.
¶ 37. This amendment effects a subtle change in the purpose of bail and a significant decrease in the degree of confidence as to future appearance required for a court to release the defendant on personal recognizance or unsecured appearance bond.
¶ 38. The subtle change is the shift in focus from "nonappearance" to "flight." Without further clarification, these concepts could be quite different; "flight" could be understood to describe attempts to flee the jurisdiction or to go into hiding within Vermont in order to avoid service of an arrest warrant for failure to appear. But the newly enacted definition of "[f]light from prosecution," which includes any action or behavior undertaken to avoid court proceedings, is far broader. See 13 V.S.A. § 7576(9). It does not include accidental or unintentional failures to appear in court when required,[12] but it does bring the focus of the statute back to a defendant's future appearance in court, rather than on actions such as leaving the state or hiding to avoid arrest for nonappearance. For that reason, to the extent there is a distinction between "nonappearance" and "risk of flight," it is subtle. If the Legislature intends for courts to limit the imposition of bail to only those cases in which a court concludes that a defendant poses a risk of fleeing the jurisdiction, escaping custody, hiding out, or otherwise attempting to evade prosecution (as opposed to simply not coming back to court when required), it has not said so.
¶ 39. The significant change is the change from "ensuring" appearance to "reasonably mitigating" the risk of flight. This change is significant because it clearly signals that the Legislature is no longer calling upon trial judges to "ensure" that defendants appear in court when required. Had it intended to do so, it would have called upon courts to "eliminate" the risk of flight. Its use of the term "reasonably mitigate" reflects that the Legislature accepts and endorses a reasonable degree of uncertainty as to whether a defendant will appear in court when scheduled as a fair trade-off for the cost savings and perceived increased fairness of a system in which courts impose bail requirements in fewer cases. As a practical matter, this change incrementally raises the bar for requiring bail, and should reduce the number of defendants required to post bail.
¶ 40. In this case, the trial court recited the proper standard. In concluding that defendant poses some risk of flight, the court relied most heavily on two considerations specifically identified by the Legislature-the nature and circumstances of the offense charged and the accused's mental condition at the time of the alleged offenses. See 13 V.S.A. § 7554(b)(1). The court acknowledged the other statutory considerations pertinent to the risk-of-flight determination, including defendant's length of residence in the community and employment, and concluded that notwithstanding these factors, he posed some risk of flight. See id. Although I think it is a close case, regardless of my own view as to *612 whether some bail is necessary to reasonably mitigate the risk of flight in this case, I cannot join the dissent's conclusion that as a matter of law on this record the trial court exceeded its discretion in concluding that defendant posed some risk of flight.
II. Ability to Pay
¶ 41. The amendment to § 7554 as to the defendant's ability to post bail does not appear to substantively change our pre-amendment interpretation of the bail statute, and does not provide specific guidance as to how the defendant's ability to pay figures into the calculus. See 13 V.S.A. § 7554(a)(1)(E), (allowing court to require execution of surety bond with sufficient solvent sureties, or deposit of cash in lieu thereof, "[u]pon consideration of the defendant's financial means"); id. § 7554(b)(1) (identifying accused's ability to post bail as one consideration court should consider in imposing conditions of release). Nevertheless, given the court's declination to review available information about defendant's finances upon defendant's request, and its limited consideration and findings concerning defendant's finances as they relate to the bail amount it set, I would remand.
¶ 42. Prior to the 2018 amendment, this Court considered the significance of a defendant's "financial resources" in the pretrial release calculus. State v. Pratt, 2017 VT 9, 204 Vt. 282, 166 A.3d 600. Noting that the statute required consideration of a defendant's "financial resources" as a factor in the bail-setting analysis, this Court concluded that "financial resources" are closely related to a defendant's "ability to pay." Id. ¶ 16. We held that "a defendant's financial resources may affect the defendant's ability to post bail at a particular level and is among the factors a court should consider in setting bail." Id. But we also concluded that the statute did not require the court to find that a defendant has the ability to pay bail at the level set by the court. Id. ("If the Legislature had intended to require a court to find that a defendant has the ability to pay the bail set by the court, the Legislature would have said so."). We did note that "courts should be particularly circumspect in exercising their discretion to set bail at a level that a defendant cannot meet," given that pretrial detention cuts against the presumption of innocence at the heart of our criminal justice system. Id. ¶ 17.
¶ 43. As introduced, the bail reform bill that was enacted into law in 2018 allowed a court to require a defendant to post a secured appearance bond, a surety bond, or cash "[u]pon a finding establishing the defendant's financial means." H.728, 2017-2018 Gen. Assem., Bien. Sess. (Vt. 2018) (as introduced in the House, Jan. 30, 2018), https://legislature.vermont.gov/Documents/2018/Docs/BILLS/H-0728/H-0728% 20As% 20Introduced.pdf [https://perma.cc/4U2P-YRAN]. In reviewing the bill as initially proposed with the House Judiciary committee, Legislative Counsel explained that the requirement that the court make a finding was new, but the idea that the court consider the defendant's financial means was not entirely new, given that 13 V.S.A. § 7554(b) already required that. An Act Relating to Bail Reform: Hearing on H.728 Before House Comm. on Judiciary, 2017-2018 Bien. Sess. (Vt. Jan. 31, 2018), https://vermont.access.preservica.com/digitalFile_5e643d4e-2f3b-44bf-90c2-63b31610de3c/ (at 28:21) [https://perma.cc/9A6N-9B87]. Relatively quickly, the House Judiciary Committee modified the language to require "consideration" of the defendant's financial means, rather than a finding. See H.728, An Act Relating to Bail Reform: Hearing on H.728 Before House Comm. on Judiciary, 2017-2018 Bien. Sess. (Vt. Feb. 2, 2018), https://vermont.access.preservica.com/digitalFile_b373f56e-6d73-4a90-b6d9-fb33a670a282/ [https://perma.cc/RU7M-LQXX].
*613 In a subsequent hearing, Legislative Counsel explained to the House Judiciary Committee that the "upon consideration" language was adopted as a "lightening up" of the requirement to make a finding, made in response to concerns about a judge's ability to make an accurate finding regarding a defendant's financial means. An Act Relating to Bail Reform: Hearing on H.728 Before House Comm. on Judiciary, 2017-2018 Bien. Sess. (Vt. Feb. 13, 2018), https://vermont.access.preservica.com/digitalFile_54b0cd04-5398-490e-beb3-996ee8e4901a/ (at 18:30) [https://perma.cc/SZ78-N3WF]. With respect to the applicable considerations and necessary findings in bail-setting, this amendment to the bill essentially conformed the statute to our existing caselaw pursuant to which a defendant's ability to pay is a relevant consideration but is not dispositive in the bail-setting calculus.
¶ 44. Although the Legislature has confirmed that courts must consider a defendant's finances and ability to post bail, it has not given any more guidance as to the significance of the ability-to-pay factor. As we noted in Pratt, reviewing the prior iteration of the bail statute, if the Legislature intended to preclude courts from setting bail at a level that the defendant cannot pay, it would have said so. 2017 VT 9, ¶ 16, 204 Vt. 282, 166 A.3d 600. If the Legislature intends to allow bail to be set at a level a defendant cannot meet in only a rare class of cases, it has not identified any particular considerations or findings required to justify such bail beyond the general touchstone that the amount in question must be no greater than necessary to reasonably mitigate the risk of flight. Ultimately, this is a question committed to the trial court's discretion.
¶ 45. I agree with the majority that the trial court erred in declining defendant's request that the court consider defendant's sworn affidavit as to his financial resources, filed in connection with his public-defender application. Although the court is not required to credit a defendant's sworn statements concerning finances, it is required, upon request, to consider a defendant's financial resources and ability to post bail "on the basis of available information." 13 V.S.A. § 7554(b)(1). Where a defendant seeks to include the public-defender application in the bail-review record, that record is "available information." In fact, at that stage in the proceedings, it may be the only available information concerning the defendant's finances.
¶ 46. I part ways with the conclusion that the error was harmless for several reasons. First, although the court concluded on the basis of defense counsel's representation that defendant was "not a person of means," I don't believe that general statement satisfies the requirement, recently reemphasized by the Legislature, that the court consider defendant's finances and ability to post bail based on available information. Insofar as bail, if imposed at all, must be set at the least restrictive level that will reasonably mitigate the risk of flight, 13 V.S.A. § 7554(a)(1), in imposing bail, the trial court must have some understanding of defendant's finances and capacity to post bail. The minimum investment necessary to mitigate the risk of flight may be very different for someone who cannot, even with some struggle, come up with more than $ 1000 to secure release on bail versus someone who can easily post $ 25,000. Courts are not expected to make precise findings as to a defendant's income or assets, but should make use of the available information to the extent possible to develop a general sense of a defendant's financial circumstances and ability to raise *614 funds for bail.[13] I don't believe that the court's general acknowledgment that the defendant is "not a person of means" is sufficient in the face of an order for $ 100,000 bail. Even assuming that the court accepted counsel's representation that defendant was unemployed following the incident leading to his arrest and thus had no income-something the court did not actually say-because it declined to consider the application for public-defender services, the court had no information about defendant's monthly expenses, which were laid out in the public-defender application. Those expenses are an additional factor that bears on his financial resources and ability to post bail.
¶ 47. Second, the court noted that defendant's mother owns a home in Pownal, and indicated that the home could be used "as a surety." This consideration may have supported the imposition of bail if the court had some information about the value of the home and mother's equity in it, as well as mother's willingness to encumber the home to post bail for defendant, to support a finding that mother is a "sufficient solvent surety." 13 V.S.A. § 7554(a)(1)(E). But the record contains no evidence or representations concerning the value of mother's home. And although defense counsel indicated that defendant's family would be posting bail on his behalf, if it was set at a level they could afford, counsel did not indicate that mother was in a position to encumber her home to meet bail. To the extent that the trial court's setting of bail at $ 100,000 was based on a belief that mother could encumber her home to raise the funds to secure defendant's release on bail, that belief was not supported by the record.
¶ 48. And finally, the court concluded that there was a risk of flight and reviewed the necessary factors, but never indicated that the bail it set, $ 100,000, was the least restrictive condition that would reasonably mitigate the risk of flight, as the statute requires it to be. Id. § 7554(a)(1) (providing that if court "determines that the defendant presents a risk of flight from prosecution, [it] shall ... impose the least restrictive of the following conditions ... that will reasonably mitigate the risk of flight," which can include bail). Throughout the hearing, the court understandably struggled with the lack of statutory guidance as to how to weigh defendant's financial circumstances in the bail-setting calculus, asking both lawyers for guidance as to how to quantify or implement the required consideration of defendant's financial means. Apparently acknowledging that defendant's means are limited, and emphasizing the circumstances *615 and seriousness of the crime with which he was charged, the court maintained the $ 100,000 bail. It did not actually conclude that this amount was the lowest amount that would reasonably mitigate the risk of flight. Given that the trial court must measure its bail amount against the need to "reasonably mitigate" the risk of flight, and given that the trial court must choose the least restrictive conditions to accomplish this reasonable mitigation, a finding on the basis of the available information that the amount of bail required is the minimum necessary to reasonably mitigate the risk of flight is a necessary bridge between the risk of flight identified by the trial court and the amount of bail the trial court set.
¶ 49. For these reasons, I would reverse and remand this bail determination for further consideration in light of the above standards. I respectfully dissent.

The 2018 law made a number of other consequential amendments to the bail statute that are not directly relevant here. See, e.g., 2017, No. 164 (Adj. Sess.), § 1 (capping bail for certain misdemeanors at $ 200); ibr.US_Case_Law.Schema.Case_Body:v1">id. § 2 (authorizing prosecutors as well as law enforcement officers to contact a judicial officer for a determination of temporary release, and requiring the provision of certain information to the judicial officer in connection with the determination of temporary release pursuant to Vermont Rule of Criminal Procedure 5(b) ); ibr.US_Case_Law.Schema.Case_Body:v1">id. § 4 (limiting circumstances in which violations of conditions of release can support revocation of the right to bail); id. § 7 (providing that defendants held without bail pursuant to 13 V.S.A. § 7553 or § 7553a are not eligible for statutory home detention pursuant to 13 V.S.A. § 7554b ).

The trial court recognized this subtle change in the statutory requirements when evaluating the risk of flight.

I acknowledge that significant practical challenges make this hard. At the time of a bail-review hearing, the State may have no information about a defendant's finances, and the court may be left with only representations and proffers by defense counsel. As a practical matter, it likely falls to defense counsel to provide information to inform the court's analysis, even if the burden of proof on the bail question ultimately rests with the State. See State v. Duff, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989) (noting that State bears burden of proof in the bail context); State v. Gould, No. 2016-304, 2016 WL 5110144, at *2 (Vt. Sept. 2, 2016) (unpub. mem.), http://www.vermontjudiciary.org/sites/default/files/documents/eo16-304.bail.pdf [https://perma.cc/R7RX-CNKD] (holding "the sparseness of the record provides little support for the imposition of a $ 50,000 bail" and remanding for new hearing to "create an adequate record to justify" either holding defendant without bail or imposing conditions of release, and reiterating that "[a]lthough the defendant may offer alternatives," "the State has the burden of proof"). Although the State bears the ultimate burden of proof as to the necessity of bail of a particular amount, the trial court's ability to assess the financial factor depends heavily on the defendant's presentation.